UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:**<br><br>**MARK HOLLIDAY and**<br>**CAROL HOLLIDAY,**<br><br>**Debtors.** | **Bankruptcy Case**<br>**No. 10-41617-JDP** |

_____

**MEMORANDUM OF DECISION**

_____

**Appearances:**

    Craig Jorgensen, Pocatello, Idaho, Attorney for Debtors.

    Timothy Nielsen, Logan, Utah, pro se.

**Introduction**

    In 2010, Timothy Nielsen ("Nielsen") was an employee of Common Cents Construction Inc. ("CCC Inc."), a Utah corporation, and earned $2,792 in wages he was never paid. Later, Mark Holliday ("Holliday"), an

MEMORANDUM OF DECISION - 1

incorporator, director, and the President of CCC Inc., filed a chapter 13[1] bankruptcy case with his wife, Carol (collectively "Debtors"). Nielsen filed a priority proof of claim for his unpaid wages in Debtors' individual bankruptcy case, but Debtors objected to allowance of his claim, asserting the wages are owed by CCC Inc., and not Debtors. An evidentiary hearing on Debtors' objection was held on June 24, 2011, at which the parties appeared and presented testimony and evidence. The issues were taken under advisement, after additional time for briefing. Having considered the record, the parties' submissions, and applicable law, this Memorandum disposes of Debtors' objection.[2]

**Facts**

Holliday incorporated CCC Inc. in Utah in 2006. CCC Inc. Articles of Incorporation, Ex. 100. CCC Inc. maintained a Utah registered agent,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

[2] This Memorandum constitutes the Court's findings of fact and conclusions of law. Rules 7052, 9014.

MEMORANDUM OF DECISION - 2

and was organized to transact business under the laws of the State of Utah. *See id.* at 1. Upon incorporation, CCC Inc. did business in Utah, and thereafter filed tax returns in Utah. *See* Dkt. No. 55. The corporation's place of business, however, was, at all relevant times, Debtors' residence in Dayton, Idaho. *See* Ex. 100.

In March 2008, CCC Inc. obtained a certificate of authority to conduct business as a foreign corporation in Idaho. *See* Ex. 208. While Nielsen argues that he often traveled through, or picked up equipment in, Idaho while working for CCC Inc., the Court has no evidence regarding CCC Inc. projects or transactions in Idaho.

In 2010, CCC Inc. hired Nielsen, a Utah resident, to work on company jobs in Utah and Wyoming. Nielsen received several wage payments for that work, all via checks showing the Dayton address and drawn on a CCC Inc. Utah bank account. Ex. 202.

Sometime in 2010, Nielsen began working on a CCC Inc. project near Farson, Wyoming ("Farson project"). While the construction site was in Wyoming, time sheets and a receipt report for June 2010 indicate much

MEMORANDUM OF DECISION - 3

of the work ancillary to the actual construction, such as obtaining materials and supplies, was done by Nielsen in Utah. Ex. 204.

CCC Inc.'s certificate of authority to do business in Idaho was revoked on June 8, 2010. Ex. 208. Holliday, however, continued to direct Nielsen to work on the Farson project until June 25, 2010. Ex. 204. Nielsen earned $2,792 in wages in doing so, but those wages were never paid. Proof of Claim No. 3, Dkt. No. 46.

Nielsen filed a Utah small claims action against Holliday in July 2010, seeking to recover, among other items, his unpaid wages. Days before the small claims court date, though, Debtors filed a chapter 13 bankruptcy petition and faxed notice of the filing to the Utah court. The small claims court dismissed Nielsen's case due to the bankruptcy filing.

On October 1, 2010, Nielsen filed a proof of claim in Debtors' bankruptcy case, asserting a $2,792 priority claim for wages earned within 180 days before Debtors' bankruptcy was filed.[3] Proof of Claim No. 3, Dkt.

---

[3] Nielsen's proof of claim also included an unsecured claim pursuant to an oral agreement that Nielsen would be reimbursed for tool rental costs. Proof
(continued...)

MEMORANDUM OF DECISION - 4

No. 46. Debtors objected to the unpaid wages portion of Nielsen's proof of claim on February 18, 2011. Dkt. No. 43. The basis for the objection is Debtors' assertion that any wage debt is owed by CCC Inc., and not by Debtors personally. Debtors' Post Hearing Brief at 1–3, Dkt. No. 57.

CCC Inc. was administratively dissolved as a Utah corporation on January 9, 2011.

Given these facts, the Court must decide whether Nielsen's priority claim in Debtors' bankruptcy case for unpaid wages earned while employed by CCC Inc., a now dissolved corporation, should be allowed.

**Discussion**

To file a proof of claim in a bankruptcy case, a party must be a creditor. *See* § 501(a). A "creditor" is any entity holding a prepetition claim against a debtor. § 101(10). "Claim" is broadly defined, and includes any "right to payment" even if that right is contingent. *See* § 101(5).

Once a proof of claim is filed, it is prima facie evidence of the claim's

---

[3](...continued)
of Claim No. 3, Dkt. No. 46. Debtors do not object to allowance of that portion of the claim.

MEMORANDUM OF DECISION - 5

validity, Rule 3001(f), and is deemed allowed unless a party in interest objects under § 502. *See Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). Once an objection is made, a proof of claim is still sufficient absent evidence of its invalidity. *Id.* (citing *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991)). The burden of providing evidence of a proof of claim's invalidity rests with the objector. *Litton Loan Servicing, LP v. Garvida (In re Gardvida)*, 347 B.R. 697, 706–07 (9th Cir. BAP 2006). If a debtor produces evidence to rebut the presumption of validity, the burden of persuasion shifts back to the claimant. *Id.*

Here, Debtors do not dispute that Nielsen is owed wages. Debtors' Post Hearing Brief at 3, Dkt. No. 57. They object to his proof of claim, however, because, they allege, it is not enforceable against them under applicable law. *See* § 502(b)(1). Whether a party has a right to payment is determined by reference to state law. *Jensen v. White (In re White)*, 363 B.R. 157, 163 (Bankr. D. Idaho 2007) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)). In the Ninth Circuit, bankruptcy courts apply federal choice of law rules to determine which state's law applies. *Liberty Tool & Mfg. v.*

MEMORANDUM OF DECISION - 6

*Vortex Fishing Sys., Inc.* (*In re Vortex Fishing Sys., Inc.*), 277 F.3d 1057, 1069 (9th Cir. 2002) (citing *Lindsay v. Beneficial Reins. Co.* (*In re Lindsay*), 59 F.3d 942, 948 (9th Cir. 1995)). Federal choice of law rules follow the Restatement (Second) of Conflict of Laws ("Restatement"). *Id.*

Where parties to an employment contract have not agreed as to which state's law applies to their contract, Restatement § 188 provides that the law of the state with the most significant relationship with the parties and their agreement applies. The Restatement identifies several factors to determine which state has the most significant relationship:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT § 188(2). The comments to the Restatement provide insight

MEMORANDUM OF DECISION - 7

as to the weight to be assigned each particular factor. For example, the state where performance under a contract occurs has an "obvious interest" in the parties and their agreement. RESTATEMENT § 188(2) cmt. e. Nearly conclusive weight is given to the state of performance when both parties perform in the same state. *Id.* The significance of other factors, such as the parties' place of business, residence, domicile, or place of incorporation, depends largely on the issue involved. *Id.* Those factors gain greater importance when grouped with other contacts, such as the place of performance, or where both parties are domiciled, incorporated, etc., in the same state. *See id.* While a corporation's principal place of business is generally deemed more important than its place of incorporation, that is less true where a corporation does steady business in the state of incorporation. *See id.*

Additional choice of law "principles" guide the Restatement § 188 analysis, including:

> (a)  the needs of the interstate and international systems,

MEMORANDUM OF DECISION - 8

> (b)  the relevant policies of the forum,
>
> (c)  the relevant policies of other interested states and the relative interests of those states in the determination and the particular issue,
>
> (d)  the protection of justified expectations,
>
> (e)  the basic policies underlying the particular field of law,
>
> (f)  certainty, predictability and uniformity of result, and
>
> (g)  ease in determination and application of the law to be applied.

RESTATEMENT § 6(2).  There is no specific formula for applying these principles, and the weight allotted to each should vary depending on the facts of a particular case.  *See* RESTATEMENT § 6(2) cmt. c.

The parties did not provide much information to the Court about the development or negotiation of Nielsen and CCC Inc.'s employment agreement.  Nielsen's employment, however, both on the Farson and other projects, was performed in Utah and Wyoming.  CCC Inc.'s performance under the agreement was to pay wages, which it did from a Utah bank account.  Nielsen's domicile was in Utah, and CCC Inc.'s place of incorporation is Utah.  In addition, Utah obviously has considerable

MEMORANDUM OF DECISION - 9

interest in seeing wage and employment issues involving Utah corporations, Utah citizens, and work performed in Utah resolved pursuant to Utah law, and doing so likely satisfies expectations and supports a pattern of certainty, predictability, and uniformity.

Other than that CCC Inc.'s place of business is in Dayton, that Debtors personally live there, and that Nielsen traveled through and occasionally picked up equipment in the state, Idaho has no significant relationship with Nielsen, the employment agreement, or the work for which Nielsen's unpaid wages were earned. CCC Inc.'s place of business in Idaho would typically be more significant than its incorporation in Utah. However, that CCC Inc. regularly does business in Utah and Wyoming, with only "some" business in Idaho, lessens the significance of the location of its place of business in this analysis. None of the company jobs on which Nielsen was employed were in Idaho. By contrast, Nielsen did some work for CCC Inc. in Wyoming. In this respect, Wyoming likely has a more significant relationship with the parties and their employment agreement than Idaho. At the same time, Wyoming's relationship is not as

MEMORANDUM OF DECISION - 10

significant as Utah's, where, in addition to performance under the contract, the parties are also domiciled and incorporated. The Court will, therefore, apply Utah law.

In Utah, the payment of wages is governed by statute. *See* UTAH CODE ANN. §§ 34-28-1 to 34-28-19. Under these statutes, liability for employee wages is notably broad. Section 34-28-3(1)(a) of the Utah Code provides: "An employer shall pay the wages earned by an employee at regular intervals . . . ." An "employer" is defined as:

> [E]very person, firm, partnership, association, corporation, receiver or other officer of a court of this state, *and any agent or officer of any of the above-mentioned classes*, employing any person in this state.

UTAH CODE ANN. § 34-28-2(3) (emphasis added). Thus, not only is a corporation liable to pay an employee's wages under Utah state law, but a corporation's officers and agents are also liable for those wages. Holliday, as CCC Inc.'s President and agent, is liable for the payment of Nielsen's wages, and Nielsen has a right to payment from Holliday for those wages. *See also In re Konidaris*, 87 B.R. 846, 852–53 (Bankr. E.D. Pa. 1988) (finding

MEMORANDUM OF DECISION - 11

the owner and principal of a corporation liable for wages earned by an employee of the corporation under Pennsylvania's Wage Payment and Collection Law defining "employer" using virtually identical language as Utah's Payment of Wages law).

Because Nielsen had a right to payment from Holliday for wages earned within 180 days prior to Debtors filing for bankruptcy, his claim for those wages should be allowed, and is entitled to priority status in Debtors' bankruptcy case.  *See* § 507(a)(4)(A).

## Conclusion

Holliday is an "employer" who, under applicable Utah law, owes Nielsen wages.  These wages were earned within 180 days before Debtors filed for bankruptcy.  Nielsen's claim for those wages is, therefore, an allowed priority claim in Debtors' chapter 13 case.  A separate order will be entered overruling Debtors' objection to, and allowing, Nielsen's proof of claim.

Dated: June 23, 2011

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 13